# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RICKY VAN PARIS,

    *Plaintiff*,

*v*.                                           CASE NO. 09-CV-10587

COMMISSIONER OF              DISTRICT JUDGE NANCY G. EDMUNDS
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. REPORT

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

A.      **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 12.)

Plaintiff was 44 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 11, 46.) Plaintiff's relevant employment history includes work as a sandblaster, painter, drywaller, and laborer in the construction industry. (Tr. at 66, 75.) Plaintiff last worked in 2005. (*Id.*)

Plaintiff filed the instant claims on March 10, 2005, alleging that he became unable to work on September 1, 2002. (Tr. at 46, 453.) The claim was denied at the initial administrative stages. (Tr. at 32, 461.) In denying Plaintiff's claims, the Defendant Commissioner considered disorders of back, discogenic and degenerative, and affective disorders as possible bases of disability. (*Id.*)

On October 1, 2007, Plaintiff appeared before Administrative Law Judge ("ALJ") Joel G. Fina, who considered the application for benefits *de novo*. (Tr. at 8-20.) In a decision dated October 12, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 20.) Plaintiff requested a review of this decision on October 30, 2007. (Tr. at 7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on December 23, 2008, when, after the review of additional exhibits[2] (Tr. at 462-71), the Appeals Council denied Plaintiff's request for review.

---

[2]In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r*

(Tr. at 3-5.) On February 17, 2009, Plaintiff filed the instant suit *pro se* seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course

---

*of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference

from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.    Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If

6

the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 1, 2002. (Tr. at 13.) At step two, the ALJ found that Plaintiff's previous gunshot wound to the left lower leg with comminuted fractures and nerve trauma, herniated disc at the L4/L5 level, previous lumbar laminectomies and major depressive disorder were "severe" within the meaning of the second sequential step. (Tr. at 14.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id*.) At step four, the ALJ found that Plaintiff lacked the residual functional capacity to perform his past relevant work. (Tr. at 18.) At step five, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of sedentary work. (Tr. at 19.)

### E. Administrative Record

#### 1. Gunshot Wound

A review of the relevant medical evidence contained in the administrative record indicates that around 1996 Plaintiff suffered a gunshot to his left leg while hunting. (Tr. at 216, 484.) An EMG of his leg performed in April 2002 showed "almost complete transection of the peroneal nerve," which was "chronic in nature." (Tr. at 216.)

In March 2005, Plaintiff was treated by John M. Buday, M.D., who found that Plaintiff's symtoms, i.e., "itching in the third toe of the left foot," was "probably" "either related to regeneration of one of the small peripheral nerves in the foot, or due to degeneration of the nerve," but noted that "these nerves are not readily detectable by normal electrophysicological techniques." (Tr. at 274.) Therefore, Dr. Buday recommended "we just continue to watch this." (*Id.*)

### 2. Herniated Disc

Plaintiff was treated by C.E. Kerr, D.O., for low back pain and participated in physical therapy from October 1999 to November 1999 for his low back pain and was discharged because he did "not demonstrate[] any significant improvements with therapy." (Tr. at 124-30, 125.)

Plaintiff underwent surgery, a laminectomy, on the left side at L4/L5 and the right side at L5/S1 on February 2, 2000, performed by Mark Stewart, M.D. (Tr. at 131-32.) In 2002, Plaintiff was treated by P.M. Doroghazi, M.D., Ravinda N. Goyal, M.D., and C.W. Schisler, D.O., for "left sciatica" pain stemming from "[r]ecurrent left L4-5 herniated nucleus pulposus," although "no associated weakness" was found. (Tr. at 146, 182-3.) Plaintiff decided to undergo a second laminectomy at that time. (Tr. at 147.) An MRI of the lumbar spine taken on November 12, 2002, and indicated "recurrent small to moderate disc herniation, L4-5 on the left with partial caudal extrusion" and "[m]ildly bulging annulus without superimposed disc herniation, L5-S1." (Tr. at 156.) On November 21, 2002, a chest x-ray was "normal." (Tr. at 187.) On November 25, 2002, Plaintiff underwent a second laminectomy of the L4-5 lumbar spine, diskectomy and foraminotomy. (Tr. at 158-62.)

Plaintiff again participated in physical therapy from January through March of 2003. (Tr. at 168-77.) Dr. Goyal recommended that Plaintiff terminate physical therapy because it might have been contributing to his back pain. (Tr. at 180.) On March 15, 2003, an MRI of the lumbar

spine revealed a "[l]arge extruded herniated disk fragment on the left side at L4-5 with some postsurgical changes and epidural fibrosis and scarring on the left as well at this level." (Tr. at 192.) A diagnostic image of the "lumbar spine - lateral projection view - neutral flexion and extension submitted," taken on April 7, 2003, was "normal." (Tr. at 185.) On April 9 or 10, 2003, a third "redo left L4-5 lumbar laminectomy, diskectomy, and foraminotomy" was performed. (Tr. at 163-67.) By May 2003, Dr. Goyal reported that Plaintiff "states his leg pain is all gone and he is doing well [but that he] still has a brace on his foot and is going to Henry Ford for that." (Tr. at 178.)

In May 2004, an MRI of the lumbar spine with gadolinium found "[p]ostsurgical fibrosis as well as disc fragment in the left paracentral area of L4-5" and "[m]ost likely post surgical fibrosis in the right paracentral area at L5-S1." (Tr. at 184.) In July 2004, Plaintiff was treated by Gerald E. Schell, M.D., for his recurring back pain. (Tr. at 231-32.)

A physical Residual Functional Capacity (RFC) assessment determined that Plaintiff could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand or walk for at least 2 hours in an 8-hour workday, sit, with normal breaks, for about 6 hours in an 8-hour workday, and was limited in the ability to push or pull in his lower extremities. (Tr. at 299.) The RFC further found that Plaintiff was occasionally limited in all the postural abilities and could never balance. (Tr. at 300.) No manipulative, visual, communicative, or environmental limitations were found. (Tr. at 301-02.) The physical RFC found Plaintiff "partially credible." (Tr. at 303.) The RFC noted its findings differed from Dr. Schisler's note of March 8, 2005, wherein he stated that Plaintiff was unable to work because he was awaiting back surgery, noting that the doctor had not seen Plaintiff since 2003. (Tr. at 304.)

    3.    **Major Depressive Disorder**

Plaintiff was also treated by Michigan Psychiatric and Behavioral Associates, P.C., between November 2003 and November 2004 for depression. (Tr. at 235.) Upon discharge, it was noted that Plaintiff had actively worked toward his goals, had made "substantial progress on his plan to leave his relationship" and had "an increased knowledge of why he enters into dysfunctional relationships." (Tr. at 235-36.) In addition, Plaintiff's prognosis was "good." (Tr. at 236.) Plaintiff again sought treatment from July through September of 2006, after having broken up with his girlfriend. He was discharged due to "non-complaint/no contact." (Tr. at 311.)

A Psychiatric Review Technique conducted in April 2005 concluded that Plaintiff had an affective disorder, i.e., major depression. (Tr. at 279, 282.) It was determined that the depression caused no restriction of activities of daily living nor did he have any episodes of decompensation. (Tr. at 289.) It was also determined that Plaintiff had mild limitations in maintaining social functioning and moderate limitations in maintaining concentration, persistence, or pace. (Tr. at 289.) The doctor also noted that Plaintiff's "personal issues [are] resolving," that Plaintiff's prognosis is "good," that he "gets along fine w/others," and "does not handle stress very well," but that "his condition is not serious enough to keep him from doing all types of jobs." (Tr. at 291.) The doctor found Plaintiff to be "only partially credible." (Tr. at 291.)

A mental RFC completed the same day concluded that Plaintiff was not significantly limited in his ability to remember locations and work-like procedures, his ability to understand and remember very short and simple instructions or the ability to carry out those instructions, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or proximity to others without being distracted by them, the ability to make simple work-related decisions, the ability to interact appropriately with the general public, the ability to ask simple questions or request assistance, the ability to be aware of normal hazards and

take appropriate precautions, or the ability to travel in unfamiliar places or use public transportation. (Tr. at 293-94.) The mental RFC also concluded that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out those detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervision, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanness, the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others. (*Id.*) As to functional capacity, it was noted that Plaintiff's "understanding and memory are adequate, in the low average range," that "sustained concentration and persistence are moderately limited," that "social interaction and adaptation are moderately limited" but that Plaintiff "retains the capacity to perform simple tasks on a sustained basis." (Tr. at 295.)

A mental RFC completed by Kishore Kondanpaneni, M.D., found Plaintiff was not significantly limited in his ability to remember locations and work-like procedures, the ability to understand and remember one or two-step instructions or the ability to carry out the same, the ability to make simple work-related decisions, the ability to ask simple questions or request assistance, the ability to travel to unfamiliar places or use public transportation, and found plaintiff was moderately limited in the ability to understand and remember detailed instructions and carry

11

out the same, the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, the ability to maintain an ordinary routine without supervision, the ability to work in combination with or proximity to others without being distracted by them, the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervision, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanness, the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others. (Tr. at 329-30.) Dr. Kondanpaneni further indicated that Plaintiff's "biggest problem at this time is his temperament. He is angered easily." (Tr. at 325.)

   4.  **Plaintiff's Evidence and Testimony**

Plaintiff indicated in his function report that he cares for children and pets and is able to dress himself, but often has difficulty putting socks and shoes on, is able to care for his own personal hygiene (usually takes a shower because it is difficult to get into and out of the tub), and is able to drive but sometimes asks his girlfriend to drive so he can stretch or get into a more comfortable position, is able to fix sandwiches and frozen dinners for himself, is able to go shopping occasionally, is able to handle his own finances, watches movies and reads hunting magazines, visits friends or family on the telephone or in person on a daily basis, but is not able to do housework. (Tr. at 100-03.)

Plaintiff testified at the administrative hearing that, in October 2006, he started a business called "Tri-City Taxi" and that he is the sole employee of that business. (Tr. at 478-79.) He indicated he makes approximately four to five runs per day and earns "just enough to keep the insurance." (Tr. at 479.) He testified that before he started his own company, he had driven for another cab company for "about a year" and that he worked in that position about three days a week. (Tr. at 480-81.)

5.     **The Vocational Expert's Testimony**

The ALJ asked the vocational expert (VE) to consider a person with Plaintiff's background and skill set who:

> is able to lift up to 20 pounds occasionally, lift or carry up to 10 pounds frequently in light work as defined by the regulations, allowing this person to sit or stand alternatively at will, never climbing ladders, ropes or scaffolds, occasionally climbing ramps or stairs, frequently balancing, occasionally stooping, occasionally crouching, never kneeling, never crawling, frequently handling objects. By that I mean gross manipulations but only occasionally overhead while avoided concentrated exposure to unprotected heights.

(Tr. at 515.) The VE testified that such an individual could perform any of the following regionally available jobs: security guard (6,100); cashier (18,000); and assembly worker (9,000). (Tr. at 515-16.) The ALJ then asked the VE to consider the same factors given in the first hypothetical and to consider the additional limitation that the work be limited to "simple, routine, and repetitive tasks." (Tr. at 516.) The VE indicated the numbers given were all unskilled positions that are simple, repetitive and routine; thus, the numbers would be the same. (Tr. at 516.) The ALJ next asked the VE to consider all the factors given in the first and second hypothetical and to consider the additional limitation that the exertional level would be sedentary. The VE indicated that the following jobs would be available at the sedentary level regionally: cashier (21,000); telemarketer (5,300); and receptionist (13,400). The VE also indicated that if a person

were unable to maintain a work schedule for five days a week, at 8 hours a day, such a person would be precluded from performing any job. (Tr. at 517.) When asked by Plaintiff's counsel what percentage of time an employee needs to be "on task" in the average unskilled work day described in the hypothetical, the VE indicated 70%, such that a worker could be "off task" thirty percent of the day and still perform the jobs satisfactorily. (Tr. at 518.) The VE stated that her testimony was consistent with the descriptions in the Dictionary of Occupational Titles (DOT). (Tr. at 517-18.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to undertake a limited range of sedentary work. (Tr. at 13-18.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I first suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff contends that the limitation in the hypothetical to simple, routine, and repetitive tasks may be representative of unskilled work but does not accurately address Plaintiff's mental abilities or limitations. (Doc. 9 at 8.) Plaintiff notes that the medical evidence shows that Plaintiff has anger, irritability and temperament issues that were not addressed by the ALJ. (Doc. 9 at 9.) Therefore, Plaintiff contends, the hypothetical did not address the severe impairment of depression. (Doc. 9 at 9-10.) In his reply brief, Plaintiff adds that the hypothetical failed to take into consideration the fact that Plaintiff's concentration is impaired on a moderate level. (Doc. 13 at 2.) Plaintiff cites *Benton v. Comm'r of Social Security*, 511 F. Supp. 2d 842 (E.D. Mich. 2007), in support of his argument, noting that the "RFC and concentration rating in [Plaintiff's] case are remarkably similar to *Benton*." (Doc. 13 at 3.)

A hypothetical limitation to "jobs entailing no more than simple, routine, unskilled work" is not, by itself, sufficient to convey moderate limitation in the ability to concentrate, persist, and keep pace. *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005) (*cited with approval in Ealy v. Comm'r of Social Security*, ___ F.3d ___, 2010 WL 394241, at *11 (6th Cir. 2010)). However, I suggest that the hypothetical provided by the ALJ in this case sufficiently conveyed the instant Plaintiff's particular limitations.

Dr. Kondanpaneni opined that Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods. (Tr. at 329.) Dr. Kondanpaneni also found, however, that Plaintiff's "biggest problem at this time is his temperament," not any limitation in his ability to concentrate. (Tr. at 325.) In addition, the mental RFC concluded that although Plaintiff's abilities for "sustained concentration and persistence are moderately limited," Plaintiff "retains the capacity to perform simple tasks on a sustained basis." (Tr. at 295.) Furthermore, the Psychiatric Review Technique indicated that Plaintiff's depression caused no restriction of activities of daily living, that his "personal issues were resolving," that Plaintiff's prognosis was "good," and that "his condition [was] not serious enough to keep him from doing all types of jobs." (Tr. at 289-91.)

I therefore suggest that the medical evidence of mental impairment in this case supports the ALJ's finding. *See Infantado v. Astrue*, 263 Fed. App'x 469, 477 (6th Cir. 2008) (substantial evidence supported ALJ's decision where, although the psychiatrist found "moderate" limitations in the plaintiff's ability to maintain attention and concentration for extended periods, the psychiatrist noted plaintiff's daily activities and concluded that the plaintiff was capable of performing simple tasks on a sustained basis); *Moore v. Comm'r of Social Security*, No. 08-14365, 2009 WL 3698550, at *5 (E.D. Mich. Nov. 5, 2009) (finding no error where plaintiff alleged ALJ failed to adequately account for moderate limitations on ability to maintain concentration, persistence, and pace, because doctor concluded that although plaintiff had such limitations, he could do the simple, unskilled work addressed in the hypothetical) (citing *Johnson v. Comm'r of Social Security*, No. 08-12042, 2009 WL 814509 (E.D. Mich. Mar. 26, 2009)).

I do not find *Benton* applicable to the instant scenario. Although Plaintiff correctly notes that the plaintiff in *Benton* was moderately limited in the ability to maintain concentration,

persistence and pace, Plaintiff fails to note that remand was necessary in *Benton* because the hypothetical was incomplete. When the VE was asked about the amount of time an individual needs to be on task to perform the jobs described, the VE "could not provide a definite answer regarding whether this individual could perform the jobs mentioned." *Benton*, 511 F. Supp. 2d at 846. Therefore, the court in *Benton* remanded the case under sentence four so that the VE could provide the necessary answers. In the instant case, the VE was asked the same question regarding percentages of time required to be on task and she provided a clear answer, i.e., that the person described in the hypothetical could meet the requisite time on task and perform the jobs. (Tr. at 518.) Since the record in this case is complete and the VE answered all the questions before her, remand would not aid review.

Plaintiff has not argued that the ALJ improperly discounted Dr. Klondapaneni's opinion regarding his ability to work. Had he made such an argument, I would suggest that the ALJ's decision to give less weight to Dr. Klondapaneni's opinion was supported by substantial evidence. The ALJ noted that Plaintiff has remained stable on his medications, has not sought emergency or other hospitalized treatment, has not been referred for counseling due to his anger or depression and has returned to employment on his own initiative. Thus, the ALJ concluded that Plaintiff's anger and depression were not an impediment to employment. I therefore suggest that the ALJ's decision to not give Dr. Klondapaneni's opinion controlling weight was proper because it was not well-supported and was inconsistent with other substantial evidence in the record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

For all these reasons, after review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of

choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  | s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗 |
|---|---|
|  | CHARLES E. BINDER |
| Dated: February 24, 2010 | United States Magistrate Judge |

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

| Date: February 24, 2010 | By s/Patricia T. Morris |
|---|---|
|  | Law Clerk to Magistrate Judge Binder |